NATALIE WILDEY FARLEE, Plaintiff, *v.* HART S. FARLEE, Defendant.

Supreme Court, Monroe County, April 29, 1929.

*Spencer, Ogden & Spencer*, for the defendant, for the motion, appearing specially.

*James A. Farrell* [*Eugene Van Voorhis* of counsel], opposed.

RODENBECK, J. The defendant is not entitled to have the levy under the attachment set aside. He is in contempt of the Court of Chancery of New Jersey in the payment of alimony to the plaintiff, which the plaintiff is seeking to recover in this action and the facts reveal a studied attempt to defeat the collection of this alimony since the order to show cause was served upon him under which the present amount of alimony was fixed.

The order to show cause why the allowance for alimony should not be increased was served upon him November 29, 1926, and within a month, on December 21, 1926, he assigned to his second wife his share in the estate upon which the levy was made. The examination before the chancellor of New Jersey cast some doubt on the consideration for this assignment. The defendant said in his affidavit on this motion that he has not been a partner of J. S. Farlee & Co. since 1923, and yet three of the prior assignments of interests in the estate were made in 1923, another in 1924, and that to his second wife in 1926, the consideration of most of which assignments appears to be advances made to said firm. In his examination before the chancellor in relation to the last assignment he said: " Q. Were the monies advanced by your second wife paid to you in a lump sum? A. One amount, consisting of $28,000, and the firm borrowed from her father on a note, and when her father died that amount was taken out of her share of his estate and I stood liable for it, giving her my note for it. The other amounts were given in lump sums. * * * Q. And what sum total? A. The sum total is over $68,000." Now, it is claimed that the

sum total is over $90,000, within $67,000 of his entire interest in the estate. A transfer to a wife for an inadequate consideration is, at least, open to suspicion even where there are only subsequent creditors. While the application to increase the alimony was pending, and on January 6, 1927, the defendant's second wife, with apparent intent further to prevent the plaintiff from reaching the funds thus assigned, executed a trust agreement, embracing said funds, in which the trustee protected itself against possible litigation. The plaintiff, now, attacks this assignment, upon which the trust agreement rests, as in fraud of her rights, which issue the defendant may meet by proper procedure.

The doubt as to the intent of the defendant in removing to Michigan should be resolved against him. The plaintiff has made out a *prima facie* case. He removed on September 14, 1927, but at that time the increase in the alimony had been allowed and the defendant had appealed from the order fixing the amount. While this appeal was pending, he decided to go to the State of Michigan, and the circumstances show that he did that as a further attempt to embarrass and defeat the plaintiff in the collection of her alimony. The change in the entry of the social register of New York, the registration in Michigan, and employment and residence there, were all intended to put a good face on the attempt to evade the service of summons and defeat the plaintiff's claim. The efforts of plaintiff's counsel to locate defendant, statements at defendant's office that he was " out of town," the statement of the superintendent of the apartment where he formerly resided in Brooklyn " not to give out his address," delays resulting from negotiations for settlement, the statement by one of the attorneys for defendant to the effect that if defendant was going to be asked for increased alimony, he would be advised to " get out of the city," that by another attorney that, as a prior action had been discontinued in which he represented defendant, he did not " feel at liberty, without further advice from Mr. Farlee, to give his present address," and that by a third attorney that he did not know defendant's address, all point to a concerted attempt to conceal the whereabouts of the defendant and to permit him to evade service and escape liability for plaintiff's claim.

The interest of the defendant in the estate in question, attached here, is not that of a beneficiary entitled to a future income, which would not be assignable, and not subject to attachment (Pers. Prop. Law, § 15, as amd. by Laws of 1911, chap. 327; *Judis* v. *Martin*, 218 App. Div. 402), but an accrued income and vested share in an estate, which might be transferred. (Pers. Prop. Law, § 15, subd. 1.) The property sought to be reached in this case is

the share of the defendant in an estate amounting to something like $147,683.74 and an accrued income amounting to about $1,716.90, subject to some deductions. This property is tangible property, consisting of money owing to the defendant. The share in the estate, however, had been assigned while it was merely a contingent remainder, and out of this assignment arise the questions which the defendant has raised on this motion. He contends that, having assigned his share in this estate, there was nothing to attach, but he forgets that a creditor is not bound by an assignment, but may, under proper circumstances, commence an action to set aside the assignment, or, in connection with an action to recover his claim, may attach the property assigned on the ground that the assignment was fraudulent. This has always been the rule with respect to tangible property such as is the property involved in this case, and the rule which prevents an attachment upon equitable assets or choses in action, such as is applied in *Anthony* v. *Wood* (96 N. Y. 180) and kindred cases, which proceed upon " peculiar grounds," is not applicable. (*Hess* v. *Hess*, 117 N. Y. 306, 308.) The rule applicable to this case, involving money belonging to the defendant which has been assigned, is the same as that applied to any other property capable of manual delivery, such as a horse or goods, wares and merchandise. The statute provides a means by which the alleged fraudulent character of an assignment, under the circumstances of this case, may be determined.

But the right to attach equitable assets which have been assigned seems to be settled by the Uniform Fraudulent Conveyance Act, which defines " assets " of a debtor as any " property not exempt from liability for his debts," " conveyance," among other things, as every assignment of " tangible or intangible property " (Debtor & Creditor Law, § 270, as added by Laws of 1925, chap. 254), and " personal property " is defined in the General Construction Law as including, aside from specific things mentioned, " everything, except real property, which may be the subject of ownership." (§ 39.) The Uniform Fraudulent Conveyance Act also provides that a creditor, whose claim has matured, may not only commence an action to have the assignment set aside, but may " disregard the conveyance and attach or levy execution upon the property conveyed." (Id. § 278, subd. 1, par. b, as added by Laws of 1925, chap. 254.) This language would seem to place all species of property, tangible or intangible, legal and equitable, upon the same footing, and would apply to the property involved on this motion. (*Heidelberger* v. *Heidelberger*, 196 App. Div. 626; *Wetmore* v. *Wetmore*, 149 N. Y. 520; *Hoagland* v. *Leask*, 154 App. Div. 101; affd., 214 N. Y. 645.)

The summons and complaint were served upon the defendant

within the thirty days prescribed by statute. (Civ. Prac. Act, § 905.) The statute does not provide that the proof of service shall be filed within ten days after service, but such service is not complete until after such filing. The papers were filed in time. (Civ. Prac. Act, § 906; Rules Civ. Prac. rule 51.)

The plaintiff may not be entitled to rely upon subdivision 5 of section 903 of the Civil Practice Act, the service having been personally made without the State without an order under section 235 of the Civil Practice Act, but the other grounds stated are sufficient to sustain the attachment.

The failure to state the absence of counterclaims in the language of the statute (Civ. Prac. Act, § 903) is not serious, since it is correctly stated in the attachment, and the language used, " over and above all counter-claims made by the defendant," is substantially the same, and constitutes a technical defect which may be corrected by affidavits on the motion.

The motion is denied, with ten dollars costs of motion.

So ordered.